[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15224
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00308-LSC

FAIRFIELD COMMUNITY CLEAN UP CREW INC,

Plaintiff - Appellant,

versus

MIKE HALE,
in his official capacity as Jefferson County Sheriff,
STEVE MARSHALL,
in his official capacity as Attorney General,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 22, 2018)

Before WILSON, NEWSOM, and FAY, Circuit Judges.

PER CURIAM:

Appellant, Fairfield Community Clean-Up Crew, Inc., appeals the district court's decision to abstain from considering its federal-law claims under the *Younger*[1] abstention doctrine, in light of a pending civil-forfeiture proceeding against it in state court.  After careful review, we affirm.

## I

In early February 2017, Community opened a "bingo" facility in the City of Fairfield, Alabama, which, it contends, was legally permitted under Alabama Constitutional Amendments 386 and 600, and Fairfield Municipal Bingo Ordinance No. 1024G.  Appellees, Jefferson County Sheriff Mike Hale and Alabama Attorney General Steve Marshall, contend that Community's electronic bingo machines are illegal gambling devices under Alabama law; accordingly, on February 24, they executed a search warrant on Community's facility, seizing its bingo machines and some other property.  That same afternoon, Community filed this lawsuit alleging equal protection and due process violations.  It requested declaratory relief, a preliminary injunction, and a permanent injunction to prohibit the State of Alabama from interfering with its bingo operations.  Community also moved for a temporary restraining order, but the parties later agreed that the motion was moot when filed given that the State had executed the search warrant and seized property earlier that day.

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

On March 6, ten days after Community filed its lawsuit in federal court, the Jefferson County District Attorney filed a civil action in state circuit court—significantly, styled "*State of Alabama v. Harris, et al.*"—seeking (1) the condemnation and forfeiture of the allegedly illegal gambling devices that were seized during the February 24 search, and (2) a determination that the devices violated Alabama law.  Four days later, on March 10, Sheriff Hale and Attorney General Marshall filed a motion to dismiss Community's federal lawsuit, arguing (in relevant part) that to the extent the district court had jurisdiction over Community's claims, it should abstain (under the *Younger* doctrine) from exercising jurisdiction due to the pending state-court civil-forfeiture action. Community responded to the motion to dismiss and filed an amended complaint. Sheriff Hale and Attorney General Marshall then filed a second motion to dismiss, which the parties briefed.  During this period the district court also continued the preliminary-injunction hearing multiple times.

While the state-court enforcement action was still pending, the district court ruled on the second motion to dismiss.  First, the district court dismissed Community's state-law claims for declaratory and injunctive relief for lack of subject-matter jurisdiction under the Eleventh Amendment.  Then—and more importantly for our purposes—as to Community's allegations of ongoing violations of federal law, the court acknowledged that it had subject-matter

jurisdiction, but abstained from exercising it under *Younger* and dismissed the suit. Community appealed to this Court challenging only the district court's decision to abstain under *Younger*.

On appeal, Community argues (1) that the district court erred in abstaining under *Younger* and (2) that abstention is not warranted because exceptional circumstances exist. We consider these issues in turn, reviewing the district court's decision to abstain for abuse of discretion. *Rindley v. Gallagher,* 929 F.2d 1552, 1554 (11th Cir. 1991) ("In the Eleventh Circuit, a district court's decision to abstain will only be reversed upon a showing of abuse of discretion.").

## II

Put simply, the *Younger* abstention doctrine precludes federal courts from interfering with pending state judicial proceedings absent extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37, 41 (1971). Although *Younger* involved a state criminal action, the Supreme Court has since clarified that the "policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). As a result, the Supreme Court has expanded the doctrine's reach to other types of proceedings, including—as relevant here—state-initiated civil-enforcement proceedings. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604 (1975) (extending *Younger* to state-

4

brought civil-enforcement actions that are "akin to [] criminal prosecution[s]"); *see also Trainor v. Hernandez*, 431 U.S. 434 (1977).

The pending state action here is a civil-enforcement proceeding, brought by the State of Alabama, seeking a determination that Community's bingo machines are illegal gambling devices under Alabama Code § 13A-12-27, which makes possession of such a device a criminal offense. *See* Ala. Code § 13A-12-27. Accordingly, the state-court civil-forfeiture action is the type of action to which the *Younger* abstention principles generally apply, and to determine whether abstention is proper, we look to the three "*Middlesex*" factors: "first, do [the state proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges[?]" *Middlesex*, 457 U.S. at 432.

## A

Community asserts that the first *Middlesex* factor—whether the state proceeding constitutes an ongoing state judicial proceeding—is not satisfied here. In particular, it contends that the state-court proceeding was not "ongoing" in the relevant sense because, it says, at the time it filed the federal-court action, the state proceeding was not yet pending. But in *Hicks v. Miranda*, the Supreme Court clarified that the requirement that a state proceeding be "ongoing" must not be

understood to impose a rigid "first to file" rule; rather, "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." 422 U.S. 332, 349 (1975). Contrary to Community's assertions that "proceedings of substance" had occurred before the state-court civil-forfeiture action was filed, the district court had not held any hearings and Sheriff Hale and Attorney General Marshall had not filed any substantive pleadings. That is precisely the type of timeline that satisfies the "ongoing"-ness criterion of *Middlesex*'s first factor. *See For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1219 (11th Cir. 2002) (stating that abstention is justified where there had been a "lack of any hearings whatsoever ... combined with the stark fact that the states, having filed no pleadings, had not begun actively litigating the federal case at the time the prosecutions were initiated").

## B

Community also challenges the second *Middlesex* factor—whether the state proceeding implicates important state interests. Although Community acknowledges that the State of Alabama has an important interest in enforcing its gambling laws, it contends that Alabama's interest in protecting its citizens (like Community) outweighs its law-enforcement interest.

6

"The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature." *Middlesex*, 457 U.S. at 432. "Proceedings necessary for the vindication of important state policies … also evidence the state's substantial interest in the litigation." *Id.* Here, the noncriminal civil-forfeiture proceeding "bear[s] a close relationship to proceedings criminal in nature" because it requires a determination whether Community's bingo machines violate Alabama's illegal gambling laws, which (as already explained) make possession of a "gambling device" a criminal offense. *See* Ala. Code § 13A-12-27. Additionally, the civil-enforcement proceeding is "necessary for the vindication" of Alabama's policies on illegal gambling. Therefore, *Middlesex*'s second factor is satisfied.

## C

Finally, Community argues that the third *Middlesex* factor—whether there is an adequate opportunity in the state proceedings to raise constitutional challenges—is not satisfied here because (1) Alabama courts have held that trial courts do not have subject-matter jurisdiction to hear bingo-related cases requesting injunctive and declaratory relief and (2) Alabama courts are biased regarding electronic bingo when it comes to applying Alabama's gambling laws. "Minimal respect for the state processes ... precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex,* 457 U.S. at

7

431. Accordingly, a plaintiff "bears the burden to establish that the state procedures are *inadequate*." *Butler v. Alabama Judicial Inquiry Comm'n,* 245 F.3d 1257, 1262 (11th. Cir. 2001).

Community's first contention is simply erroneous. In fact, Alabama case law shows that the proper avenue for seeking redress for alleged constitutional injuries is in the state civil-forfeiture proceeding. *See Old Republic Union Ins. Co. v. Tillis Trucking Co.,* 124 F.3d 1258, 1262 (11th Cir. 1997) (stating that Alabama state procedural law does not "clearly bar the interposition of the constitutional claims"); *see also State v. $223,405.86,* 203 So.3d 816, 822–828 (Ala. 2016) (involving a bingo establishment that raised Equal Protection claims as part of its defense to a state-court civil-forfeiture action).

As to Community's second argument, simply because the Alabama Supreme Court may have considered and rejected a constitutional argument that Community wants to make does not mean that Community lacks an adequate opportunity to raise the argument in an Alabama court. *See Old Republic,* 124 F.3d at 1262–63 ("[T]he possibility that the Alabama Supreme Court may decide, upon reflection, that Old Republic's contentions are valid, undergirds our conclusion that perceived futility does not mean that Old Republic lacks an adequate opportunity to raise its contentions in the Alabama Supreme Court.").

8

Accordingly, Community has failed to establish that Alabama's procedures are inadequate, and therefore, *Middlesex*'s third factor is also satisfied.

### III

Not so fast, says Community.  Even assuming all three *Middlesex* factors are satisfied, certain "extraordinary circumstances" may make *Younger* abstention improper.  For instance, as relevant here, abstention could be inappropriate where the state-court action is brought in bad faith.  *Middlesex,* 457 U.S. at 434–35.

Community asserts that the state-court civil-forfeiture action here was pursued in bad faith because, it says, it had "no fair warning" that it was potentially violating Alabama's gambling laws and because it obtained approval from the District Attorney and the Fairfield Police Chief before it opened its establishment.  As to the former assertion, Community ignores multiple recent Alabama Supreme Court decisions that, read fairly, put would-be bingo proprietors on notice that their operations could run afoul of state gambling laws.  *See, e.g.*, *$223,405.86*, 203 So. 3d 816; *State v. Greenetrack*, 154 So. 3d 940 (Ala. 2014).  And as to the latter contention—suggesting that it had advance approval—Community has simply failed to present any evidence sufficient to support it.

Community also contends that the state-court civil-forfeiture action was pursued in bad faith because Sheriff Hale and Attorney General Marshall have not made any arrests or charged anyone with any crimes.  Under Alabama law,

however, illegal gambling devices can be subject to seizure and forfeiture in a civil action, and arrests are not a necessary component of that process. *See* Ala. Code § 13A-12-30; *see also, e.g., $223,405.86,* 203 So.3d at 820–21.

Therefore, Community has failed to establish bad faith sufficient to amount to "exceptional circumstances" that would prevent *Younger* abstention from applying in this case.

### IV

For the foregoing reasons, the district court's judgment is **AFFIRMED**.